UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**RAY C. COLLINS,**
    **Plaintiff,**

v.  04-2148

**BLAIR J. LEIBACH, et al.,**
    **Defendants.**

### MEMORANDUM OPINION AND ORDER

    Before the court is the defendants, Eugene McAdory, Robert Mitchell, Alexander Ramm and Roger Walker's unopposed summary judgment motion [59].

### Standard

    Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*; Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992). Further, this burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

    Fed. Rule Civ. Pro. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574,

1

586 (1986).  Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

## Background

Ray Collins is currently incarcerated by the Illinois Department of Corrections at Lawrence Correctional Center.  He alleges pursuant to 42 U.S.C. §1983 that the defendants violated his constitutional rights while he was incarcerated at Danville and Menard Correctional Centers.  Specifically, Plaintiff alleges that Defendants Mitchell and Ramm violated his First Amendment rights when they retaliated against him for exercising a constitutionally protected right, and that Defendants McAdory and Walker violated his Eighth Amendment right to be free from cruel and unusual punishment when they exposed him to inhumane conditions of confinement in the segregation unit at Menard Correctional Center.  Defendants deny violating Plaintiff's constitutional rights and assert that his claims fail as a matter of law.  Defendants request the entry of summary judgment in their favor and against Plaintiff.

## Statement of Undisputed Material Facts[1]

1. Plaintiff alleges that he drafted a "complaint" on May 23, 2003, complaining that Defendant Mitchell had slammed a cell door in his face.  Deposition of Ray Collins ("Plaintiff's Dep."), marked as Exhibit A, at pp.5-6).
2. Plaintiff submitted the "complaint" to Danville Correctional Center's Internal Affairs Department and retained a copy for his file, but did not send a copy to Defendant Mitchell.  Plaintiff's Dep. at p.6; Correspondence dated May 23, 2003 from Ray C. Collins, attached to Plaintiff's complaint [19] as an exhibit.
3. Defendant Mitchell never learned of Plaintiff's May 23, 2003 "complaint" until after the instant suit was initiated.  Affidavit of Robert Mitchell ("Mitchell Affidavit"), marked as Exhibit B.
4. On July 6, 2003, Defendant Mitchell issued Plaintiff a disciplinary report charging 304-Insolence, 403-Disobeying a Direct Order, and 404-Violation of Rules.  Disciplinary Report dated 07/06/03, attached to Plaintiff's Complaint as an exhibit; Mitchell Affidavit.
5. In the July 6, 2003 disciplinary report, Defendant Mitchell wrote that Plaintiff had disobeyed two direct orders to release hold of a door and then "dropped his pants to his knees in the hub... smiling and laughing as he put his shirt into his pants and pulled his pants up."  Disciplinary Report dated 07/06/03, attached to Plaintiff's Complaint as an exhibit; Mitchell Affidavit.

---

[1]Supporting exhibits are attached to the Defendants' Memorandum of Law [60], except where noted otherwise.

6. Plaintiff alleges that Defendant Mitchell issued the disciplinary report in retaliation for Plaintiff's "complaint." Plaintiff's Dep. at p.20.
7. Plaintiff was escorted to segregation after the July 6, 2003 incident and remained there for a period of time which resulted in the loss of his job on the floor crew. Plaintiff's Dep. at pp.13 & 30; Complaint at ¶23.
8. Defendant Ramm was a Correctional Major at Danville Correctional Center who, as part of his duties, exercised supervisory authority over the inmate workers on the floor crew. Affidavit of Alexander Ramm ("Ramm Affidavit"), marked as Exhibit C.
9. Plaintiff was eventually released from segregation and became eligible to work again at Danville Correctional Center, but was never rehired on the floor crew. Plaintiff's Dep. at p.31.
10. On August 18, 2003, Plaintiff filed a 20 page institutional grievance regarding the July 6, 2003 disciplinary report, claiming that it was false and had been fabricated by Defendant Mitchell. Committed Person's Grievance dated August 18, 2003, attached to Plaintiff's Complaint as an exhibit; Plaintiff's Dep. at p.24.
11. Defendant Ramm's name was not mentioned in any of the 20 pages of Plaintiff's August 18, 2003 grievance. Committed Person's Grievance dated August 18, 2003, attached to Plaintiff's Complaint as an exhibit.
12. Plaintiff alleges that, after he filed his August 18, 2003 grievance, the Warden of Danville Correctional Center instructed Defendant Ramm to keep Plaintiff from being rehired on the floor crew. Plaintiff alleges that Defendant Ramm then instructed other staff not to rehire Plaintiff based on the Warden's instructions. Plaintiff's Dep at pp.24-27.
13. Defendant Ramm was not routinely involved in the offender grievance process at Danville Correctional Center and would generally only become aware of a particular grievance if it was directed against himself and he was contacted by a counselor or grievance for a response. Ramm Affidavit.
14. Defendant Ramm was never aware of Plaintiff's August 18, 2003 grievance until after this lawsuit was initiated. Ramm Affidavit.
15. Defendant Ramm denies retaliating against Plaintiff for his use of the grievance process and denies that Warden Leibach instructed him on the matter. Ramm Affidavit.
16. Defendant Ramm does not recall why Plaintiff was never rehired on the floor crew but believes that there were no positions available at the time due to a payroll freeze. Ramm Affidavit.
17. Defendant Ramm and at least one additional staff member each had the authority to submit an offender's name for a position on the floor crew. Ramm Affidavit.
18. Defendant Ramm recalls that the Payroll or Assignment Committee did the actual hiring. Ramm Affidavit.
19. Defendant Ramm did not have the authority, by himself, to reinstate Plaintiff to a position on the floor crew or to keep him from being hired. Ramm Affidavit.
20. Plaintiff was transferred to Menard Correctional Center on November 12, 2003, where he was housed in segregation until April 23, 2004. Plaintiff's Dep. at p.36.
21. Defendant McAdory was the Warden at Menard Correctional Center at the time of Plaintiff's transfer. Plaintiff's Dep. at pp.39-40.

22. Plaintiff alleges that the conditions of confinement he experienced while in segregation at Menard violated his Eighth Amendment rights. Plaintiff's Dep. at p.37.
23. Plaintiff claims that, in the winter of 2003-2004, the segregation staff at Menard would leave the heat on until it reached over ninety degrees in the cell house and inmates complained of the heat, then leave it that way for a day or two and then turn the heat off, opening the windows and allowing the temperature to drop to near freezing. Plaintiff's Dep. at pp.37-39.
24. Plaintiff alleges the extremely cold cell temperatures occurred two or three times a week over the course of a month or a month and a half. Plaintiff's Dep. at p.38.
25. Plaintiff testified that it did not get cold enough that water would freeze but that it was very cold. Plaintiff's Dep. at p.38.
26. Plaintiff does not allege that he was denied blankets or warm clothes to protect him from the cold cell temperatures. Plaintiff's Dep. at p.38.
27. Plaintiff wrote to Defendant McAdory about the temperature problem and filed an institutional grievance, but never received a response regarding the issue. Plaintiff's Dep. at p.39.
28. Plaintiff does not recall who was responsible for turning the heat on and off in the manner described above, but states that they were not supposed to be doing it and that Defendant McAdory probably never learned that it was happening. Plaintiff's Dep. at pp.39-41.
29. Plaintiff admits that Defendant Walker probably never knew of the temperature problem, but states that he is a defendant in this case because he is the Director of the Department of Corrections. Plaintiff's Dep. at p.41.
30. Plaintiff also alleges that the cell conditions in the segregation unit at Menard were unsanitary. Plaintiff's Dep. at p.41.
31. Plaintiff alleges that the cells did not get cleaned except by the cell occupants and that they were not provided with sufficient supplies to clean the cells. Plaintiff's Dep. at p.42.
32. Plaintiff had access to a short handled broom, a short handled mop, and a mop bucket filled with pre-mixed disinfectant water to mop the floor, walls, grillwork and bars with once per week. Plaintiff's Dep. at p.42; Menard Institutional Directive 05.01.001- Safety and Sanitation; Memorandum dated January 7, 2002 to all North II Cellhouse Staff regarding Cell Cleaning Service; North II Cellhouse Cleaning Schedule, attached hereto as Exhibit D.
33. Though not allowed to use the mop and disinfectant water to clean the sink basin, Plaintiff was able to clean his sink basin using towels, shampoo, and other items from his personal cosmetic stash. Plaintiff's Dep. at p.43.
34. Plaintiff also alleges that the laundry service was unsanitary in that insufficient amounts of laundry detergent and/or bleach were used, resulting in parasites or bacteria that made his skin itch or crawl. Plaintiff's Dep. at pp.44-45.
35. Plaintiff never saw a parasite. Plaintiff's Dep. at p.45.
36. Plaintiff testified that he has extremely sensitive skin, and the itching or crawling could have been a detergent allergy or other problem. Plaintiff's Dep. at pp.44-45.
37. Plaintiff testified that he was also experiencing irritated skin at Lawrence Correctional Center around the time his deposition was taken. Plaintiff's Dep. at p.46.

38. Plaintiff alleges that the meals served to the segregation population were inadequate. Plaintiff's Dep. at p.47.
39. Plaintiff testified that he often went hungry and lost 8-10 pounds while in segregation at Menard. Plaintiff's Dep. at p.47.
40. Plaintiff testified that he did not find the problem of inadequate food to be too unbearable. Plaintiff even thinks that prison food has preserved his health in some ways, and therefore doesn't want "to make a big fuss about [it]." Plaintiff's Dep. at pp.47-48.
41. Plaintiff wrote to Defendant McAdory regarding his problems with the cell temperature and the laundry, and also filed an institutional grievance, but did not contact Defendant McAdory regarding the alleged unsanitary conditions or the inadequate food. Plaintiff's Dep. at p.51.
42. Plaintiff never spoke to Warden McAdory about the alleged inhumane conditions of the Menard segregation unit. Plaintiff's Dep. at p.51.
43. Plaintiff never wrote or spoke to Defendant Walker about the alleged inhumane conditions of the Menard segregation unit. Plaintiff's Dep. at p.51.
44. The purported signatures of Defendant Walker that appear on the Administrative Review Board correspondences attached to Plaintiff's Complaint were actually made by Defendant Walker's designee, Nancy Tucker, former Manager of the Office of Inmate Issues. Affidavit of Terri Anderson, attached hereto as Exhibit E.
45. Plaintiff testified that the conditions in the Menard segregation unit were unpleasant and a hardship for him, but that he got through it and did not suffer any type of physical injury as a result. Plaintiff's Dep. at p.52.
46. Plaintiff submitted a letter to the Administrative Review Board complaining of the conditions in segregation at Menard however it was not processed or reviewed since it was not in compliance with departmental rules. Affidavit of Jackie Miller ("Miller Affidavit" marked as Exhibit F).
47. Plaintiff failed to properly file and appeal a grievance in accordance with departmental rules regarding his claim that the conditions of segregation at Menard were inhumane. Miller Affidavit.

## Discussion and Conclusion of Law

Plaintiff's retaliation claims against Defendant Mitchell and Defendant Ramm both fail as a matter of law. Not every claim of retaliation by a disciplined prisoner who has filed a grievance against prison officials will state a cause of action. *Cain v. Lane*, 857 F.2d 1139, 1143, at n.6 (7th Cir. 1988). In order to prove a retaliation claim, a plaintiff must first show that the activity prompting the retaliatory act was protected. *Buise v. Hudkins*, 584 F.2d 223, 231 (7th Cir. 1978), cert. denied, 440 U.S. 916 (1979). Filing prison grievances is a protected activity. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Second, a plaintiff must demonstrate that his protected activity was a "substantial and motivating factor" in an adverse decision or action taken against him. *Id.* Merely alleging the ultimate fact of retaliation is insufficient. Benson v. Cady, 761 F.2d 335, 342 (7th Cir. 1985).

In this case, Plaintiff alleges that the issuance of the July 6, 2003 disciplinary report was an act of retaliation by Defendant Mitchell. Plaintiff alleges that Defendant Mitchell was retaliating against him because of a "complaint" Plaintiff had filed against him. However, Plaintiff's act of filing his complaint was not a protected activity. The "complaint" was actually a letter sent to the Internal Affairs Department at Danville complaining that Defendant Mitchell had slammed a cell door in Plaintiff's face. Submissions to the Internal Affairs Department are not part of the offender grievance process. See 20 Ill. Adm. Code §§ 504.810, 504.850 (2007). Thus, Plaintiff's "complaint" was protected conduct only to the extent it related to a matter of public interest or concern and not just a personal matter. *See Sasnett v. Litscher*, 197 F.3d 290, 292 (7th Cir. 1999)(imputing to inmate free-speech claims requirement of public-employee line of cases that protected speech must be about a "public concern"). The Seventh Circuit has held that the speech of an inmate regarding matters that concern all prisoners is constitutionally protected. *Pearson v. Welborn*, 471 F.3d 732, 740-741 (7th Cir. 2006). However, an inmate's speech about matters of purely personal concern is not protected conduct. *See, e.g., McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005); *Brookins v. Kolb*, 990 F.2d 308, 313 (7th Cir. 1993). In this case, Plaintiff's allegations that Defendant Mitchell slammed a cell door in his face are of purely personal concern, thus his letter to Internal Affairs was not constitutionally protected speech.

Furthermore, even assuming for the sake of argument that the "complaint" was protected conduct, Plaintiff's retaliation claim against Defendant Mitchell still fails because Plaintiff has not demonstrated that it was a substantial and motivating factor in Defendant Mitchell's decision to issue the July 6, 2003 disciplinary report. Plaintiff sent a copy of the "complaint" to the Internal Affairs Department and retained a copy for himself, but did not send a copy to Defendant Mitchell. Defendant Mitchell states that he did not even know about the "complaint" and Plaintiff has submitted no evidence to the contrary. Plaintiff has failed to demonstrate that the "complaint" was a substantial and motivating factor for Defendant Mitchell's conduct. Plaintiff was not engaged in protected conduct, and he has done nothing more than allege the ultimate fact of retaliation by Defendant Mitchell. Plaintiff's retaliation claim against Defendant Mitchell fails as a matter of law.

Plaintiff's allegations against Defendant Ramm are somewhat different. Plaintiff alleges that Defendant Ramm retaliated for a different reason; namely, because Plaintiff filed a 20 page grievance on August 18, 2003 complaining of the disciplinary report issued by Defendant Mitchell. Plaintiff's right to file the grievance was constitutionally protected, however Plaintiff's claim still fails because he has not demonstrated that the grievance was a substantial and motivating factor in an adverse decision or action taken against him.

First, there was no adverse decision or action taken by Defendant Ramm. Plaintiff lost his job on the floor crew because he was sent to segregation. Plaintiff was released from segregation while still at Danville however he was never rehired on the floor crew. Plaintiff alleges that this was because the Warden instructed Defendant Ramm to see to it that Plaintiff was not rehired. Defendant Ramm states that it was because there were no positions on the floor crew available at the time. Either way, Defendant Ramm did not make any adverse decision

6

or take any adverse action that prevented Plaintiff from being rehired. Defendant Ramm could not hire Plaintiff to the floor crew solely on his own authority. All he could do was submit Plaintiff's name for consideration. The actual hiring was done by either Payroll or the Assignment Committee, to the best of Defendant Ramm's recollection. Furthermore there was at least one other staff member who could have submitted Plaintiff's name for consideration. Plaintiff has failed to demonstrate that Defendant Ramm actually made an adverse decision or took an adverse action regarding the Plaintiff.

Second, assuming for the sake of argument that Defendant Ramm did make an adverse decision or take an adverse action, Plaintiff has not demonstrated that his grievance was a substantial and motivating factor. Furthermore, Defendant Ramm did not even know about the grievance. Defendant Ramm was not involved in the offender grievance process so he did not become aware of a particular grievance unless it was directed against himself. In this case, there is no triable inference that Plaintiff's grievance was a substantial and motivating factor for Defendant Ramm. To the contrary, the evidence shows that the grievance did not involve Defendant Ramm, and that Defendant Ramm did not even know about the grievance. Plaintiff's retaliation claim against Defendant Ramm also fails as a matter
of law.

Plaintiff's Eighth Amendment claim against Defendants McAdory and Walker fails as a matter of law. The Eighth Amendment prohibits conditions of confinement that involve the unnecessary and wanton infliction of pain as well as those that are grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). An Eighth Amendment claim alleging cruel and unusual punishment has two requirements: (1) the deprivation suffered must be sufficiently serious, an objective requirement, and (2) the defendants must have been deliberately indifferent to that serious deprivation, a subjective requirement. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). In this case, Plaintiff has failed to establish both the objective and subjective components of a cruel and unusual punishment claim brought under the Eighth Amendment. Regarding the objective test, prison conditions may be harsh and unpleasant without violating the prohibition against cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Id*. at 834. The "evolving standards of decency that mark the progress of a maturing society must be considered," *Rhodes*, 452 U.S. at 337, but inmates cannot expect the amenities, conveniences, and services of a good hotel. *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). When considering a cruel and unusual punishment claim about conditions of confinement, the "totality of the conditions" is the focus. *Demallory v. Cullen*, 855 F.2d 442, 445 (7th Cir. 1988).

Here, Plaintiff has identified four conditions that, taken together, allegedly violated his constitutional rights. These are, generally, (1) that he was subjected to hot and cold cell temperatures; (2) that his cell was unsanitary; (3) that the laundry service was unsanitary and caused his skin to itch; and (4) that the meals were inadequate. First, Plaintiff alleges that he was subjected to extremely hot and cold cell temperatures in the winter. Specifically, Plaintiff alleges that the segregation staff at Menard would periodically turn the heat off and open the

7

windows, allowing the temperature to drop to near freezing. Plaintiff alleges that this would happen after the heat had been running at full blast with the windows closed and inmates complained of the heat. Plaintiff alleges that the cold cell conditions occurred two or three times a week over the course of a month or a month and a half in the winter of 2003-2004. Plaintiff admits that it was not cold enough that water would freeze but states that it was very cold. Second, Plaintiff alleges that his cell was unsanitary. Specifically, Plaintiff claims that the segregation cells were unsanitary because they did not get cleaned, except by the occupants. Plaintiff has testified that he was able to clean his cell himself, but alleges that he was not provided with sufficient cleaning supplies. It is undisputed that Plaintiff had access to a short handled broom, a short handled mop, and a mop bucket filled with pre-mixed disinfectant water to mop the floor, walls, grillwork and bars once per week. Plaintiff alleges that his sink basin remained unsanitary because he was not allowed to use the mop and disinfectant water to clean it. However, Plaintiff admits that he was able to clean the sink using towels, shampoo, and other items from his personal cosmetics stash. Third, Plaintiff alleges that the laundry service was unsanitary because his skin used to itch when he was in segregation at Menard. Plaintiff believes that insufficient amounts of detergent and/or bleach were being used, resulting in parasites or bacteria that made his skin itch. Plaintiff admits, however, that he never saw a parasite, and that the itching could have been caused by a detergent allergy or other problem. Fourth, Plaintiff alleges that the meals he was served while in segregation were inadequate. Plaintiff alleges that he often went hungry and lost 8-10 pounds while in segregation at Menard.

The four conditions alleged above are not sufficiently serious to implicate the Eighth Amendment. Regarding his allegations of inadequate food, Plaintiff admits that getting by on the amount of food served was not too unbearable. Plaintiff thinks that prison food has preserved his health in some ways, and therefore doesn't want "to make a big fuss about [it]." With regard to the allegations about the laundry being unsanitary, Plaintiff's entire claim seems to be based on the fact that he remembers his skin would itch or crawl while he was in segregation at Menard. However, Plaintiff admits that he has extremely sensitive skin, and that it could have been a detergent allergy or other problem. In fact, Plaintiff experienced the same kind of skin irritation at Lawrence Correctional Center around the time of his deposition. Plaintiff simply has presented no evidence that his skin irritation was due to unsanitary laundry service at Menard, other than his bald allegation of the fact. Plaintiff's allegations about his cell being unsanitary are not too troubling either. Plaintiff is not entitled to cleaning services such as a good hotel would provide. *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). Plaintiff admits that he was able to clean his cell himself. Even though he alleges he was not provided with cleaning supplies for his sink, he was able to make do with what he had in the cell. Furthermore it is undisputed that he had weekly access to a short handled broom, short
handled mop, and disinfectant water.

Plaintiff's allegations about the cold temperature do not rise to the level of a constitutional violation, either. The Eighth Amendment is not violated when a healthy prisoner is housed in a cold cell so long as he is supplied with adequate protection from the cold, such as blankets and heavy clothing. *Benson v. Godinez*, 919 F. Supp. 285 (N.D. Ill. 1996). Inmates who have been successful in challenging cold cell temperatures as violating their Eighth

Amendment rights have generally been exposed to extremely cold temperatures in their cells, combined with either a long duration of the cold or a lack of alternative means of keeping warm. *See Dixon v. Godinez*, 114 F.3d at 643.  Here, Plaintiff has not alleged any special medical condition that causes him to be extra sensitive to the temperature.  Nor has Plaintiff alleged that he was denied blankets or clothing with which to keep warm.  Plaintiff may have been subjected to unpleasant conditions, but the totality of the conditions alleged do not show that he was denied "the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 837.  Plaintiff himself admits that although the conditions were unpleasant and a hardship for him, he got through it ok and did not suffer any type of physical injury as a result.  Plaintiff's Eighth Amendment claim fails as a matter of law because he has not alleged sufficiently serious conditions of confinement.

Even if the conditions alleged were objectively, sufficiently serious, Defendants McAdory and Walker are still entitled to summary judgment because prison officials can only be liable for inmate exposure to cruel and unusual conditions of confinement when they have the requisite knowledge and intent. *Farmer*, 511 U.S. at 837.  This is the subjective requirement.  In order to be liable, the official must know about the inhumane conditions and disregard an excessive risk to the inmate's health and safety. *Id*.  In other words, the official must be "deliberately indifferent." *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006).  Deliberate indifference is not negligence or even gross negligence; it approaches intentional wrongdoing, that is, ignoring a known risk. *Id*.  The minimum intent required is "actual knowledge of impending harm easily preventable." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985).  The official must "demonstrate something approaching total unconcern for [the inmate's] welfare in the face of serious risks." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992), or must demonstrate a "conscious, culpable refusal to prevent harm." *Id*.  No liability attaches if the harm is remote, or the official is unaware of or unable to correct the problem. *Id*.

Plaintiff has failed to establish the requisite personal involvement for liability under §1983 with respect to Defendants McAdory and Walker.  Liability under §1983 requires a plaintiff to show direct, personal responsibility on the defendants' part for those acts and omissions claimed to have deprived the plaintiff of his rights. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).  Supervisory officials will not be found liable under the doctrine of respondeat superior. *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985).  In order to be held liable under §1983, a supervisor must have "had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *J.H. and J.D. v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003).  A supervisor who is merely negligent in failing to detect and prevent other employees' conduct will not be liable under §1983. *Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Plaintiff has not alleged any facts that show personal involvement on the part of Defendant McAdory or Defendant Walker.  The purported signatures of Defendant Walker on the Administrative Review Board correspondences attached to Plaintiff's complaint were made by Defendant Walker's designee, not by him personally.  Plaintiff testified that he does not know who was responsible for the temperature problems but that they were not supposed to be doing it

and that Defendant McAdory probably did not even know it was happening. Plaintiff has only alleged that he filed a grievance and notified Defendant McAdory by letter of the temperature and laundry problems. However, personal involvement cannot be established simply by alleging that a defendant was notified by letter of an alleged Constitutional violation. *Volk v. Coler*, 638 F.Supp. 1540, 1548, (C.D. Ill.1986) aff'd 845 F.2d 1422 (7th Cir. 1988). Defendants McAdory and Walker cannot be found liable for failing to detect the wrongdoing of others. Defendants McAdory and Walker lack the requisite personal involvement for liability under §1983. Plaintiff's Eighth Amendment claim fails as a matter of law and Defendants McAdory and Walker are entitled to summary judgment in their favor.

**It is therefore ordered:**

1. **Pursuant to Fed. R. Civ. Pro. Rule 56(c), the defendants' unopposed summary judgment motion is granted [59]. The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff.**
2. **Any remaining matters are rendered moot, and this case is terminated, with the parties to bear their own costs.**
3. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. § 1915(g).**

ENTER this 5th day of February, 2008.

                                                    s/ DAVID G. BERNTHAL
                                                    U.S. MAGISTRATE JUDGE